IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| HORACE FRANKLIN DEFORE | ) | Case No. 12-71915 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| LEE BANK AND TRUST COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. 13-07009 |
| | ) | |
| HORACE FRANKLIN DEFORE | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM DECISION

Lee Bank and Trust Company (hereinafter "Lee Bank" or "the Bank") filed this adversary proceeding seeking a determination of non-dischargeability of certain debts owed to it by the Defendant pursuant to 11 U.S.C. §523.  The Defendant (hereinafter "Debtor") filed a Motion to Dismiss the Amended Complaint pursuant to Bankruptcy Rule 7012.  Lee Bank filed an Objection to the Motion to Dismiss and the Debtor then filed a Memorandum in Support of his Motion.  Counsel for the parties appeared at the scheduled hearing on April 2, 2013 and presented oral arguments, after which the matter was taken under advisement.  The Motion to Dismiss raises three defenses:  first, a plea of the Virginia statute of limitations applicable to causes of action for fraud with respect to Counts I - V; second, that any claim based on allegedly false financial statements in Counts I - IV is on its face without merit because the financial statements in question were joint statements of the Debtor and his wife although only the Debtor was an obligor on the loans made by the Bank; and third, that Count VI asserting that the Debtor

maliciously and intentionally converted some of the Bank's collateral is defective because it fails to allege any value for such converted collateral and therefore any cognizable damages resulting from the claimed conversion. For the reasons which follow, the Court will overrule the first two defenses and sustain the third, but will grant the Bank an opportunity to file another amended complaint to remedy this deficiency of pleading in Count VI.

SUMMARY OF AMENDED COMPLAINT'S FACTUAL ALLEGATIONS

Lee Bank asserts that from 1996 to 2012 it provided loans and loan extensions to the Debtor for his use in purchasing business property and equipment, furnishings and inventory to operate a dental lab. These loans and extensions of credit were based on written applications completed by the Debtor, who provided financial statements, tax returns and other documents upon which Lee Bank alleges it reasonably relied. The Debtor filed his Chapter 7 petition on October 19, 2012.[1] His schedules reflect that his principal creditor is Lee Bank to which he owes over $695,000. The Bank asserts that the Debtor submitted materially false financial statements and tax returns concerning his financial condition, with the intent to deceive the Bank and to induce the Bank to loan new money and to refinance existing loans, that the Bank reasonably relied on these written representations in making these loans and the losses sustained by the Bank are the proximate result of the Debtor's fraudulent conduct. Therefore, the Bank seeks to have the outstanding balances deemed non-dischargeable and be granted a non-dischargeable judgment in the amount of $696,208.58. This is precisely the same amount which the Debtor

---

[1] This adversary proceeding was filed by Lee Bank on January 28, 2013. The Debtor was granted a discharge on March 13, 2013.

listed as being owed to Lee Bank in his Schedule D[2] filed on November 2, 2012 without any indication that such debt was disputed, unliquidated or contingent.

More specifically, in Count I Lee Bank demands a non-dischargeable judgment in the amount of $397,428.93 plus interest at 6.75%, attorney's fees and costs based on the circumstances surrounding nine loans made to the Debtor between October 31, 1996 and April 28, 2005.  In Count II the Bank seeks a non-dischargeable judgment in the amount of $185,065.95, plus interest at 6.75%, attorney's fees and costs based upon a loan request made by the Debtor on April 27, 2005.  In Count III the Bank seeks a non-dischargeable judgment in the amount of $50,441.78 plus interest at 7.5%, attorney's fees and costs based upon three loans made to the Debtor between January 28, 2009 and June 25, 2009, and various extensions made by the Bank through April 19, 2012.  In Count IV the Bank demands a non-dischargeable judgment in the amount of $25,220.88 plus interest at 7.5%, attorney's fees and costs based upon a loan request made on August 5, 2009 and various extensions through April 19, 2012.  The Bank asserts that these loans were made for the purpose of renewing existing loans, providing working capital or were to be used by the Debtor to purchase a new dental lab or equipment for the business.  The Debtor provided personal financial statements listing business equipment, inventory and accounts receivable, federal tax returns and other financial documents in support of the loan applications.  The Bank asserts that such indebtedness is not dischargeable in that the loans were obtained by false pretenses, false representations or actual fraud; that the Debtor provided materially false written statements regarding his income and financial condition with

---

[2] This indebtedness is indicated to be partially secured by a deed of trust upon certain real property owned by the Debtor in Lee County, Virginia.

the intent to deceive and that it reasonably relied on such statements and has suffered loss. More specifically, as to each of these Counts I - IV, the Bank asserts the loans enumerated in them are

> not dischargeable pursuant to 11 U.S.C. § 523(a)(2) in that the loans were obtained by false pretenses, false representations, or actual fraud, and further that debtor provided materially false written statements respecting his income and financial condition with the intent to deceive Plaintiff and upon which Plaintiff reasonably relied in extending credit to Debtor.

Count I, paragraph no. 77 of the amended complaint.[3]

In Count V the Bank focuses on a February 26, 2003 loan request of $590,435 – $336,000 to purchase a dental lab in Knoxville with the remainder to renew two existing loans. On March 26, 2003, the Debtor deposited the loan proceeds into his own bank account and then transferred $124,244.92 from this same account on April 4, 2003 to pay off the existing mortgage held by the Bank on the Debtor's personal residence. Because the Debtor and his wife own the residence as tenants by the entirety, such property is exempt from the individual claims against the Debtor alone, including the Bank's claims. The Bank asserts that it reasonably relied on the Debtor's stated intention regarding the loan and would not have made this loan had it been aware that it was the Debtor's intention to use the funds for another purpose. The Bank asserts that this indebtedness is not dischargeable pursuant to § 523(a)(2) in that loan was obtained by false pretenses, false representations or actual fraud upon which the Bank reasonably relied. Accordingly, it demands a non-dischargeable judgment against the Debtor in the amount of $336,042.91 plus interest at 5.25%, attorney's fees and costs.

---

[3] Substantially similar allegations are contained in paragraph nos. 88, 115 and 126 of the Amended Complaint with respect to Counts II, III, and IV, respectively.

In Count VI the Bank alleges willful and malicious injury in connection with two additional loans. The Bank alleges that it duly perfected security interests in the Debtor's Accounts and other rights to payment, Inventory, Equipment, General Intangibles and Deposit Accounts to provide collateral for these two loans and predecessor loans by filing UCC financing statements. The Bank prepared an inventory of the Debtor's equipment in the dental lab in October 2010. A second inventory was prepared by the Bank on December 26, 2012 when it took possession of the business location known as Rural Health Clinic. A list of missing items was prepared after comparing the two inventories. Upon cessation of operations at Rural Health Clinic, the Debtor relocated his ongoing business, Tri State Dental Lab, to a new location in Jonesville. The Bank asserts that the Debtor wrongfully conveyed and transferred the missing equipment, furnishings and inventory in which the Bank has a perfected security interest by physically moving the same to Tri State Dental or has otherwise disposed of the same. The Bank also asserts that the Debtor transferred his accounts and other rights to payment to Tri State and thereby wrongfully converted the Bank's collateral. It contends that conversion of secured property constitutes willful and malicious injury to the Bank and any remaining indebtedness is not dischargeable under §523(a)(6) and therefore it demands a non-dischargeable judgment against the Debtor in the amount of not less than $582,494.88 plus interest at 6.75%, attorney's fees and costs.

PARTIES' LEGAL CONTENTIONS

The Debtor asserts that the Bank should be required to file an amended complaint with regard to only those causes of action that accrued within the two year period prior to the

filing of the bankruptcy case if based upon fraud, that all counts relating to the reliance upon a joint financial statement should be stricken and that the Bank should amend the allegations in Count VI to include the value of the collateral that was not located.

More specifically, the Debtor asserts that all of the counts of the Amended Complaint, except Count VI, are barred by the statute of limitations regarding fraud under Va. Code § 8.01-248, in that in excess of two years from the time of the commission of any fraud and/or the reasonable period of time for discovery of any fraud had expired prior to commencement of this litigation. The Debtor asserts that any renewals of the promissory notes that occurred more than two years prior to the time of the filing of the bankruptcy case are time barred.

Citing *In re Moran*[4], Lee Bank asserts that the Debtor's position is flawed in that "it fails to recognize the distinction between a suit brought under state law to enforce state created rights and a suit filed in bankruptcy court to determine dischargeability issues." In the dischargeability context, "there are two separate and distinct causes of action: one cause of action is a state or federal court action on the debt itself, and the other cause of action is on the dischargeability of that debt." *In re Boyer,* 1999 WL 33954735, at *7 (E.D. Va. Aug. 24, 1999) (citing *In re Taylor,* 54 B.R. 515, 517 (Bankr. E.D. Va. 1985)). Lee Bank asserts that the question of dischargeability of the debt is a distinct issue governed solely by the limitations period established by bankruptcy law[5] and that the only question with respect to the state statute of limitations is whether the Bank sought to enforce its debt against the Debtor within the period

---

[4] 152 B.R. 493, 495 (Bankr. S.D. Ohio 1993).

[5] *In re McKendry*, 40 F.3d 331, 337 (10th Cir. 1994).

prescribed by Va. Code. §8.3A-118.[6]  According to the Bank, each of the five loans at issue either matured or was accelerated in 2012, so the ability of the Bank to enforce these debts is not statutorily precluded, absent a discharge of such indebtedness, until 2018.  Additionally, under *In re McKendry*, 40 F.3d 331 (10th Cir. 1994), the non-dischargeability claim must be brought within the limitations period established by bankruptcy law.  Under Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, a complaint to determine dischargeability of a debt under § 523(c) must be filed no later than 60 days after the first date set for the meeting of creditors.  Because this complaint was initially filed on January 28, 2013, exactly 60 days after said date, Rule 4007(c) does not preclude the Bank's claim.

The Debtor, while not disagreeing with the case law cited by the Bank, relies upon a recent case, *Guilani v. Bak (In re Bak)*, 2013 Bankr. LEXIS 713, at *20-21 (Bankr. D. Conn. Feb 20, 2013), as support for his position that any renewals of any promissory note that occurred more than two years prior to the time of the filing of the bankruptcy case would be barred by the applicable statute of limitations.[7]

The Bank also asserts that even if the Virginia statute of limitations for fraud is applicable, the claim for fraudulent misrepresentation was brought within that time period.

---

[6] "[A]n action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date."

[7] "[I]n addition to meeting the 60-day time deadline established by Fed. R. Bankr. P. 4007(c) for the bringing of a non-dischargeability action, a plaintiff must also meet any timeliness requirements established by the non-bankruptcy law applicable to the case at hand.  In other words, if non-bankruptcy law requires that a lawsuit to establish liability on any viable ground be brought prior to applicable statutes of limitation, and the creditor has not done so, then the debt cannot be established for non-dischargeability purposes."

Under § 8.01-249, a cause of action for fraud is deemed to accrue "when such fraud . . . is discovered or by the exercise of due diligence reasonably should have been discovered." While the original financial information on which the Bank relied in providing the loans at issue may have been submitted to the Bank beyond the two year statute of limitations period, Lee Bank asserts that the fraud was intentionally and continuously perpetrated by the Debtor through each subsequent tax return provided to the Bank by the Debtor. According to the Bank, in each tax return provided to the Bank for 1997 to 2008, the dental labs were shown to be earning substantial profits. However, in May of 2012, the Bank was provided a copy of the 2010 federal tax return of the Debtor which reflected a carryover loss from 2003, 2005, 2007, 2008 and 2009. The Bank asserts that this was the first time it had reason to suspect any fraudulent behavior on the part of the Debtor and that it satisfied its due diligence requirement under Virginia law by requesting annual tax returns from the Debtor. Therefore, the Bank asserts that May 2012 is the date on which the Bank's fraud claim began to accrue. As this adversary proceeding was commenced within the two-year statute of limitations period, the Motion should be denied.

Second, the Debtor asserts that Counts I through IV should be dismissed because Lee Bank cannot establish reasonable reliance upon the financial statements as all of those statements and other exhibits relate to the joint income and joint assets of the Debtor and his spouse. While admitting that there is a split of authority, the Debtor relies on an Ohio case, *FirstMerit Bank, N.A. v. Green (In re Green)*, 240 B.R. 889 (Bankr. N.D. Ohio 1999), to support his position that relying on a joint financial statement is not reasonable reliance. In response, Lee Bank asserts that the income reflected on the financial statements and tax returns is overwhelmingly produced by the Debtor. As the majority of the income of the Debtor and his

wife consisted of business income, the Bank asserts that its reliance on the joint financial statements and tax returns as an accurate reflection of the financial condition of the Debtor and Tri State Dental Lab was reasonable under these circumstances.

Finally, the Debtor asserts that Count VI should be dismissed because the Amended Complaint fails to plead the amount of any damages suffered as a result of the alleged conversion by the Debtor of the Bank's collateral.  According to the Debtor, the loss resulting from any alleged conversion is the value of the property converted and there is no allegation in the Amended Complaint as to the value of the items that were not located.  In response the Bank asserts that the request for relief stated in the Amended Complaint satisfies Rule 8(a) of the Federal Rules of Civil Procedure as it requests that the Court enter a non-dischargeable judgment against the Debtor for conversion of collateral "in an amount not less than $582,494.88 plus interest, attorney's fees and costs."  Therefore, the Bank requests that the Motion be denied.

CONCLUSIONS OF LAW

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984 and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia.  Lee Bank alleges, and the Debtor admits in his Answer, that this is a "core" proceeding under 28 U.S.C. §157(b)(2)(E), (F), (H) and (I).  Proceedings to determine, avoid, or recover fraudulent conveyances and determinations as to the dischargeability of particular debts are "core" bankruptcy proceedings by virtue of § 157(b)(2)(H) and (I).  At this point the only questions before the Court concern the legal sufficiency of the allegations contained in the

Amended Complaint, not whether it has the constitutional authority to enter a final money judgment against the Debtor upon the Bank's state law claims against him. That latter question is one which may need to be addressed before this adversary proceeding is concluded but that is for another day.

In the six counts of the Amended Complaint the Bank asserts causes of action under §§ 523(a)(2) and (a)(6). The former section, § 523(a)(2), as relevant to this adversary proceeding, deals with

> an extension, renewal, or refinancing of credit, to the extent obtained by –
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition; [or]
> (B) use of a statement in writing –
>     (I) that is materially false;
>     (ii) respecting the debtor's . . . financial condition;
>     (iii) on which the creditor to whom the debtor is liable for such . . . credit reasonably relied; and
>     (iv) that the debtor caused to be made or published with intent to deceive[.]

In Counts I - IV the Bank asserts that the credit it extended and renewed to the Debtor was obtained both by "false pretenses, a false representation, or actual fraud" under subsection (A) and by a false financial statement under subsection (B). Count V, which concerns the loan purportedly extended to the Debtor for a specific business purpose but which he allegedly used to satisfy the mortgage loan against the personal residence owned with his wife, advances a claim purely under § 523(a)(2)(A) that the loan in question was obtained on the basis of a false representation. Count VI asserts a claim under § 523(a)(6), which excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" *Collier on Bankruptcy* provides, as it so often does, helpful commentary regarding the

application of this subsection to the contentions made in this proceeding.

> Transfers in breach of a security agreement may give rise to nondischargeable liability when the debtor's conduct is knowing and certain to cause financial harm. Unless the creditor can prove not only that the debtor knew of the security interest, but also that the debtor knew that a transfer of the property was wrongful and certain to cause financial harm to the creditor, the debt should not be found nondischargeable. Courts must be careful not to equate a breach of a contract, which happens to be a security agreement, with conduct causing willful and malicious injury.

4 *Collier on Bankruptcy* ¶ 523.12[3] at p. 523-95 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2012) (footnotes providing citations omitted).

A creditor seeking entry of a nondischargeable judgment against a bankruptcy debtor in a bankruptcy court is potentially subject to two filing deadlines. The first of these is that the adversary proceeding is filed in conformity with applicable requirements set forth in the Bankruptcy Code and Rules of Bankruptcy Procedure. The second is that any state law cause of action upon which no judgment has previously been rendered is subject to a plea of the applicable state law statute of limitations if the action is not filed within the permissible period. *See In re Boyer* and *In re Bak,* previously noted in the discussion of the Parties' Legal Contentions. There is no dispute with respect to the timely filing of this adversary proceeding under the Code and Bankruptcy Rules. The dispute is with respect to the pertinent Virginia statute of limitations.

DECISION

The Court is satisfied that the Debtor's plea of the statute of limitations should be overruled. The gist of the adversary proceeding is to obtain a determination that the debts which

the Debtor owes to the Bank, debts which the Debtor doesn't even dispute in his bankruptcy schedules, were incurred under circumstances which make them subject to an exception from discharge. The Debtor makes no suggestion that the Bank's contractual claims against the Debtor are barred by the statute of limitations, but rather asserts that its state law fraud claims are barred. If the Bank were seeking punitive damages against the Debtor for his alleged fraud, there might well be some basis for asserting the limitations plea to a cause of action which under state law might be subject to such a defense. The Bank, however, has not sought to do any such thing, but instead simply to obtain a determination under federal bankruptcy law that the Debtor has committed wrongful acts which render these debts not dischargeable. Once it is apparent that the creditor has a legally enforceable claim against a bankruptcy debtor under applicable state law, the question simply becomes whether that obligation arose under circumstances which make the debt subject to an exception to discharge under § 523(a) of the Bankruptcy Code. The Court does not see that any different result would follow under the *Bak* decision relied upon by the Debtor. As this Court reads that decision, it dealt with causes of action which were all brought beyond the permissible period under the pertinent state statute of limitations. It certainly does not deal with any contractual claim which remained viable under state law but which arose under facts which brought it within the parameters of a discharge exception under § 523(a). In short, the *Bak* decision is clearly distinguishable from the situation presented in this proceeding. Accordingly, the Debtor's plea of the statute of limitations will be overruled.

        Similarly, the Court concludes that the Debtor's effort to foreclose at the pleading stage introduction into evidence at trial of the financial statements provided by him to the Bank, on the ground that they were joint statements for the Debtor and his spouse, is not well founded.

This is simply an evidentiary issue to be considered at trial.  It will be the Bank's burden at that time, to the extent that it seeks to make a claim with respect to false financial statements under § 523(a)(2)(B), to establish that Mr. Defore, with intent to deceive, knowingly submitted to it materially false written financial statements upon which it actually and reasonably relied in extending and renewing substantial credit to him.  When it offers testimony and other evidence to carry that burden, the Debtor will have a full opportunity to cross-examine the Bank's witnesses, challenge any other evidence offered and offer any arguments he wishes to dispute either the Bank's actual reliance upon such statements or the reasonableness of any such reliance or both.  The *Green* decision cited by counsel for the Debtor did not involve a motion to dismiss a § 523 complaint on the pleadings, but rather contains a painstaking factual and legal analysis by the court of the lender's evidence after a full evidentiary hearing.  After doing so, the *Green* court summarized its assessment with the following words, "it appears from the evidence that [the loan officer] was content to rely upon the couple's [personal financial statement] and did not in fact rely on the Debtor's share of joint assets."  240 B.R. at 893.  Furthermore, the facts in that case are distinguishable from those presented in this case.  In *Green* the creditor claimed to have relied upon the financial strength provided by the value of the borrower's presumed share of certain assets which were represented on the financial statement to be joint assets but which in fact were owned solely by the borrower's spouse.  In this case, according to the allegations in the Amended Complaint, the issue seems to involve a combination of alleged false financial statements and spurious tax returns depicting a highly profitable business interest with strong positive cash flow, rather than just a claimed reliance upon the underlying value of the business assets.  Therefore, the Court will overrule the Motion to Dismiss on this ground without

prejudice to the Debtor's right to assert these contentions at the conclusion of the evidence at trial.

The Court does conclude, however, that the Motion to Dismiss is well taken with respect to Count VI which asserts a conversion claim with respect to property which the Debtor, allegedly, had pledged to the Bank as collateral for the loans it extended. It fails to allege, though, the value of the property purportedly converted to the Bank's loss. Rather the relief it seeks relates to the amount owing under the loans secured by this property. The Court concludes that the damages sustained as the result of an alleged conversion of property is an element of that cause of action. That conclusion is supported by the general legal treatise *American Jurisprudence*, which summarizes the issue as follows:

> The elements of a conversion cause of action are: (1) plaintiffs' ownership or right to possession of the property at the time of the conversion; (2) defendants' conversion by a wrongful act or disposition of plaintiffs' property rights; and (3) damages.

18 Am Jur 2d, Conversion § 2 (1985). *See also* § 151 for a "Form drafting checklist" suggesting that the pleading setting forth a cause of action for conversion allege, among other elements, the "value of the property converted" and the "damages sustained." This treatise further states that "[i]t has been said that the most distinctive feature of conversion is *its* measure of damages, which is the value of the goods converted." *Conversion* § 105. Similarly, *Michie's Jurisprudence*, which deals specifically with the law of Virginia and West Virginia, recites that "[i]n an action for trover, when the conversion is complete, the measure of damages, as a general rule, is the value of the property converted at the time and the place of conversion." 19 *Michie's Jurisprudence*, Trover and Conversion § 11 (2003 Repl. Vol.). As an element then of such cause of action, the Court further concludes that an allegation of damages is a part of the "short and

plain statement of the claim showing that the pleader is entitled to relief" that Federal Rule of Civil Procedure 8(a)(2), which is made applicable to adversary proceedings in bankruptcy by Bankruptcy Rule 7008, requires.  Accordingly, the Court in a separate order will sustain the Motion to Dismiss as to Count VI but will grant the Bank an opportunity to file another amended complaint to remedy this deficiency in its pleading.

An Order in accordance with this Memorandum Decision will be entered contemporaneously herewith.

Decided this 26th day of April, 2013.

_____
UNITED STATES BANKRUPTCY JUDGE